Good morning, Your Honors. May it please the Court, Marianne Dugan for the Appellant, Plaintiff, Western Radio. I'd like to attempt to reserve five minutes of my time for rebuttal. Regarding the Bivens claim, as in the Martin case, which I realize is an unpublished Ninth Circuit case, but it is one of the few cases that has shed light on the interplay between Bivens and the APA after the Supreme Court's Wilkie decision, the facts there are similar. In Martin, the alleged retaliatory actions were, quote, perpetually open, rendering the APA's provision for judicial review of, quote, final, unquote, agency actions perpetually illusory and thus unavailable. Here, the District Court erred in finding that the plaintiff had alleged final agency actions in all of his claims that were therefore reviewable under the APA. To the contrary, the allegations regarding many of the Forest Service communication sites involve a perpetual failure to act on plaintiff's applications, placing him in administrative limbo, and as the District Court stated, on hold. The District Court noted that regarding the Sugar Pine site at ER 38, and that was also alleged, this limbo status on other sites in the ER at ER 58 to 59. So, ma'am, how is this case distinguishable from Western Radio 2009, as to the Bivens? Correct. Skipped right to the Bivens. Understood, Your Honor. Because in that case, number one, the case law had not yet developed about when, specifically, a Bivens action would be available when there could also have been, arguably, an APA claim. And so in that case, it was not pled in the alternative, the Bivens claim. Here, I specifically included in the complaint the case law that had developed, including the Martin case. But isn't the problem the same one we had before, which is that there is final agency action? I guess you contend there is. That's the gravamen of your complaint. There's final agency action that you're attacking under the APA as arbitrary and capricious. So if there is, and the Bivens claims all are, you turned us down, in effect, why aren't they subsumed in the APA claims? Well, there are a couple of claims that do involve final agency action, but the bulk of the claims involve a failure to act, which can sometimes be reviewable under the APA, but very rarely under 706-2, I believe. Well, so if we're dealing with the — so let's first isolate the — with respect to any claim that resulted, that is — is that the agency acted and didn't do what you wanted to, you agree you don't have a Bivens claim?  With respect to — And if I could just clarify one thing. I would say that with regards to the other claims, which I know we'll get to, if — I think then the Court would have to look at the whole picture as to whether — at the summary judgment stage as to whether there had been a constitutional violation. Those other final agency actions could be used as evidence, but they are not separate claims under Bivens. Okay. So you agree with my first question with your provisos. I do. With respect to the actions — and I'm not sure here that you challenge anything — to the extent that you're challenging something that's not a final agency action, doesn't that mean your APA claims fail? No, Your Honor. With respect, I think that means there is no available APA remedy because — No, but you're — you have a bunch of claims in your complaint, as I read it, that say the agency was arbitrary and capricious in not doing certain things, correct? Failure to act claims. Failure to act. If those are not final agency actions, how are they challengeable under the APA? I don't think they are, because the situations in which — If they're not, then my next question, which is the one I really wanted to get to, is, don't you have to establish that you had a right to some action? Let me give you an example. My lease expires. It has no renewal clause. I call my landlord and I say, I'd like to renew, and I never hear from him, and then he evicts me. I don't have a right to have him renew the lease. I don't have a right to hear from him. It just — so where — when you're claiming failure to act, where is the underlying right to action that you assert? Under the APA, you do have to — one does have to identify a duty on the part of the government to act. Yes. Yes. However, under Bivens, under the Constitution, I would submit, Your Honors, under the Willowbrook case, which was from the Supreme Court from 20-something years ago, and under the unpublished Martin case, a failure to act on permit applications, an ongoing investigation that never closes, as in Martin. Well, it's a very different — in Martin, you know, Martin's a distinguishable case, as you know. Sure. But my question is still the same. If the agency has no duty to do something for your client, does it matter that they're not doing it because they don't like them? I think what the Willowbrook case said is that the government has a duty to not discriminate against people where they grant some permits and others they never grant or they sit in limbo. But you're not making an equal protection claim. You're not arguing that somebody else equally situated to you was treated differently. Oh. Well, we have two claims. One is the First Amendment and one is the equal protection class of one, yes. Class of one. Class of one. That's right. So you're not claiming — as I said, you're not claiming there's another person out there who was treated better than you. You're just claiming you were treated badly. Actually, that's not true. That's what a class of one claim is. Right. A class of one claim is I was discriminated against. I can't identify somebody else who was favored. Not a class. Okay. The difference between equal protection class of one and the classic racial, let's say, equal protection is that in equal protection class of one, you don't have a class of people who were discriminated against. There's only you. But there are other people who were treated better than you. So here we have the other communications companies at these sites that are being given lease renewals and that are being allowed to proceed as they have in the past decades. And here he is not. So it is — we are alleging an equal protection class of one claim. And I think — and not to be a broken record, but the Willowbrook case is actually very closely on point because they're — it wasn't a federal agency, so they didn't have to deal with Bivens. But a company was — it was antagonistic to the local government, and the local government retaliated, allegedly, by not acting on permits. And that was one of the types of retaliation. I'm still — now I'm very much confused by your argument. It seems to me that you just told me that this Bivens claim would only be appropriate in actions for which there is no APA review. That's correct, Your Honor. That's what the Western Radio case — That's what Western Radio 2009 said, right? Correct. Well, and again, I guess I'm back to the same old argument. And Wilkie, excuse me. I don't know why these are not subject to APA review. That's entirely the product of the agency action, aren't they? As the district court noted, the plaintiff had no — Do you want to answer my question? I am answering your question. Are they the product of the agency's action? They are actions and inactions by the agency, but they did not involve — A scheme that affirmatively speaks to the substance of the action? There's no APA remedy, because as the district court held, the plaintiff had no administrative appeal available for the denial of lease renewals. That's in the ER. But again, I think that my colleague tried to get to you on that particular issue, in that if there is no appeal, that doesn't necessarily say that there's some statutory scheme that doesn't speak to the issue. There's a statutory scheme that speaks to it, but you have no appeal from the decision. Correct. So in Wilkie, the court focused on whether there was an APA remedy. Mr. Wilkie had 18 pending administrative appeals at the time he filed suit. He was — he had a full range of administrative appeals going on here. The district court noted at ER 32, 37, 40, that there was no appeal for denial of lease renewals, ER 34, that there was no appeal available for the trespass notice. There was no appeal for failure to review plaintiff's development proposal. That's ER 38. Well, even if there's no appeal, is there APA review? I don't think there is, Your Honor, because there's no final agency action that's reviewable, because to be reviewable, there has to be first under the APA an administrative process. Well, there was a process. Yeah. The process just didn't include an appeal. So what — I have a process that — let's assume we have a process that only has an appeal, does the agency process have to provide for an appeal from that in order for the APA to be applicable? That's how I've read the APA case law. And here there were also — I didn't find that case. I tried to find such a case, and I couldn't find it. I don't know — It seems to me that if the APA — if under the APA, you deal with the claim as it is, but you're just subject to whatever the agency does in that particular matter, and it isn't a big enough deal because you really don't have anything in your contract to give you more, that at that point, the APA has been done. Everything you can do under the APA is done. And I'm still trying to figure out, then, why we're into Bivens. Well, I think — first of all, I also want to point out that the district court kind of glossed over the claims that involved a complete failure to act, which was in the complaint in paragraphs 20. But the failure to act — I don't think the district court glossed over them, but whether it did or didn't doesn't matter. The failure to act was the failure to give you something that you thought you were entitled to, right? A renewal of a lease, a permit, et cetera. Correct?  No, no, I'm not — I wasn't asking a duty. I'm asking a very simple question. All your failure to act claims were that the agency failed to do something that you wanted it to. Correct? Correct. There was an application that was put into limbo. Turned down, didn't act on an application, didn't act on a permit. If those are reviewable APA actions, that failure to act, then your Bivens claim goes away, does it not? Are you asking if the failure to — if they could be reviewable under — Sure. Let's assume we say under the APA, we're going to review the agency's failure to renew or review the agency's failure to act on the permit and see whether or not that was arbitrary and capricious, as we do under the ABA standard. If we were to do that, you would have no Bivens claim, correct? That's correct. Okay. That's what I was asking. I didn't mean to take you off. Okay. But I do think that there were — when the judge, the district court judge addressed the APA claims, she moved immediately to the actual final end action, which is all the leases being taken away from my client. But in the meantime, there were these failures to even look at certain applications my client had submitted, and those — Well, if we treated those failure to look as effective denial of your applications, then we could review them under the APA, right? I think that's correct. And then we could determine whether or not there was some substantial basis in the record for the agency in effect denying your application because it didn't act on it. Correct. And another thing that was not reviewed by the district court was that we had challenged the Forest Service's new interpretation that made all of these decisions unappealable. That's in our complaint at ER 63. Basically, there was this new regime created — that's what we allege, and it has to be taken as true at the motion-to-dismiss stage — that allowed the Forest Service to basically literally put Mr. Oberdorfer and Western Radio in limbo for many years until they figured out a way to take away his entire system of leases. And I do ask you to carefully consider that. I know you will, and I would ask that you remand. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Sean Martin for the defendants and for the U.S. on its counterclaims, I ask that you affirm the district court's judgment. Now, on the Bivens, there really isn't any daylight between this case and where this court already landed in 2009 on the Western Radio decision and subsequently in the Oberdorfer v. Jukes 2014 unpublished ruling that this court reached. You know, here again we have agency actions or supposed inactions on these special-use — these electronic sites in central Oregon. So are the inactions reviewable under the APA? They could be. Well — Well — Could be is not good enough. So are they or are they not? Well — They're challenging the inactions. So should we review them under the APA or should we say, no, we can't review them under the APA, in which case we can't really say you don't have a Bivens remedy because the APA covers it. So what's your position? I would say the great majority of these APA claims are challenges to decisions and denials. Right. And those are easy. The question is with respect to challenges to inaction, are those reviewable under the APA? Should we treat them in effect as denial of the applications and review and see whether or not the agency had a substantial basis for doing so? Well, Your Honor, I'm not — I'm not exactly sure which ones we'd be talking about. But as an example, let's — I know that one of the Western Radio claims was there was a supposed duty by the Forest Service to remove its own facilities at Round-a-Mountain. And the amended complaint that's in the record before this Court alleged that there was a duty and a requirement to remove that, you know, supposedly unused facility from Round-a-Mountain. But the Forest Service didn't do that. Now then, fast forward to the briefing on that very claim before this Court. There's simply no mandatory duty identified in a statute or a regulation. There's just a reference to an extra record declaration from a true overdorfer. Okay. So assume there's no APA review of that for that reason. I'm not sure there's a Bivens claim related to that. That's sort of a separate issue. But if there were a Bivens claim related to that, you know, the reason you didn't remove it, even though you didn't have a duty, is because you hated me. What would we — now, put the Bivens claim back into the context of our prior litigation. It doesn't go away because there's an APA remedy. Do we have to rule on its merits? I don't think so, Judge. I mean, first of all, we view it as a failure on Western Radio's part to support that potential failure-to-act claim under Section 706.1, right? It may have been an available claim, but Western Radio failed to do its part to tether that claim to an actual mandate in a statute or regulation. So that's how we look at it. We would also say that, you know, as this Court observed in the Western Radio decision in 2009, even though the APA may not be a comprehensive scheme or a comprehensive remedy, it's still available. And it need not cover every single claim or provide monetary damages. So here, when you have so many of these claims squarely covered by a record that was reviewed in great detail by the district court, you know, that there was an administrative process provided, and the district court reached the merits and looked carefully at the administrative process. You see, and that's why I'm inclined to look at these inactions and treat them as, in effect, as agency action and review to see whether the agency had a reasonable basis for doing so. So, for example, with respect to removal of the equipment, they asked the agency, you know, the agency said we're not going to do it. And perhaps the agency had a very good reason to do so, but why don't we just review it under that basis? That's certainly a rational way to look at it, Judge. You know, if there's a rational basis for an agency to make a decision. Well, we have no duty to do so. There's nothing in the law. So if we treat one way to deal with the Billings claims, in my view, and I said this to your colleague, is to treat everything she's complaining about as APA reviewable and see whether or not the agency was arbitrary and capricious in doing it. Well, you know, and that's essentially what the district court did. It, you know, it looked. That's why I said I'm not sure the district court glossed over this stuff. I think the district court dealt with it, but I think it dealt with it by saying let's not deal with technicalities about whether or not there's an APA process. They had a good reason for doing all this stuff. I think that's right. You know, not only were the claims available, they were brought and they were reviewed in great detail by the district court. You know, I don't know if we need to go there as well, but on the Billings claims, we also believe the district court got it right on Iqbal that, you know, it's really not okay to name ten individual Federal employees in a complaint and yet not even specify what they specifically did that was in violation of constitutional rights. That's a serious concern. For example, you know, four of these Biven defendants, they were only, quote, unquote, involved in the actions and inactions. That's Scott, Brand, Wesley, and Dilley. And for four other defendants, Western Radio only alleged Klein, Connaughton, Heiser, Allen, that they were involved in processing administrative appeals. So, in other words, really just doing their job. So there's really no notice provided of how that would be a constitutional violation. Beyond that, the district court didn't reach it, but there's also qualified immunity concerns. You know, if anything, the Forest Service officials here were on notice from this court's prior ruling in 2009 or the 2014 ruling on Biven's claims that administering these permits and leases on these sites is something that's reviewable by a court under the APA but doesn't give rise to Biven's remedies when these officials are doing their jobs to administer these leases. So there's multiple grounds to reject the Biven's claims, Your Honors. Let me move to the trespassing claims. It's my understanding that district court said, I'm going to allow you $29,279.58 on these trespass claims. Approximately. Approximately. Twenty-nine and change. Yes. Okay. And as I understand it, this was the amount that your opposition, that the Western Radio would have to pay if they received the leases for the total amount of the lease term. Let me back up, Your Honor. The amount, the $29,000, was on the unjust enrichment claim. Oh, sorry. Not on the trespass. My apologies. The unjust, I did go about that wrong. It's in the unjust enrichment. My worry about that is that the $29,000-some-odd is for the total amount of time they would have had the lease rather than, if you will, the amount of time they left the property there. In other words, we've got the total lease for a certain period of time, but if it's an unjust enrichment claim, which is what I was thinking about, it doesn't seem to me that the Forest Service has suffered the total amount of the money they would have had to pay for the lease, but only the amount, if you will, of time under which the property would have remained extra on the lease. So I'm not thinking it ought to be the total amount of the lease amount, but maybe just a portion of that amount. Well, a few points on that, Your Honor. First, you know, the issue, that sort of dispute about how the Forest Service made the calculations, you know, was before the district court. And as the district court noted in its ruling on those affirmative counterclaims, Western Radio didn't dispute the calculations. It didn't dispute the sum, nor has it done so on appeal. So those types of questions were, you know, Western Radio could have raised those disputes about the methodology or about the dollar amount reached, but didn't. They're not really here now. Beyond that, my basic working understanding, Your Honor, is that what the Forest Service did in calculating that number, and those calculations are in, you know, this Court's record, was it looked at the occupants and the uses that were on the Western Radio permits and leases for those three sites, you know, and it carried them forward, you know, until the district court's judgment. Because, after all, Western Radio was still there and was still running its business without authorization, and because those leases or permits had ended, you know, wasn't paying the fees it had in the past. So the Forest Service credited what had been paid, you know, and then Western Radio stayed there. As I understood it, they credited what they had paid for the lease that they had, but because they held over, they didn't get any more money, but they held over and used that ground to house their equipment or whatever they had on there, and then your calculation, if it was, for the unjust enrichment was not for the amount of time necessary to get the stuff off the land, but was for the total amount of the next time period of lease and the amount they would have had to pay for that. Well, you know, I don't think that's right, Your Honor. You know, I believe what the Forest Service did was look at, you know, a running total up until the date that... So a portion of the lease over that time period. So they did a portion? Yeah, it was year by year, you know, so it was up to the... I guess I missed that because I was trying to look through your calculations pretty carefully. Yeah, so this wasn't saying, hey, we're paying it forward 10 years or 15 years. This was looking year by year and carrying forward the continuing uses. After all, you know, Western Radio during these... Your best argument is the one you just gave, which is nobody's challenged it but me. That's a pretty good argument. Okay. Your Honor, do you have other questions about the counterclaims or about the APA? Judge Fischer? No, I'm fine. Been here, done that. Thank you, Your Honors. Thank you. Thank you, Your Honors. I see I have a little more than a minute left. I'll try to be very brief. I do want to point out that Western Radio did dispute the amount of damages, ER 215 to 216. Where in your appellate brief do you dispute it? It's in the opening brief at the section about... There's two sections about damages. One is on unjust enrichment and the other is on trespass. I understand there's two, but I don't think you ever made these arguments that I just questioned about. As to amount, surely you argue there shouldn't be any. I understand that. But let's assume for a moment there should be an unjust enrichment damages judgment. Is there any place in your brief which says it was calculated incorrectly? We cited ER 215, which is where Mr. Oberdorfer explains in his declaration about the amount of fees being charged, being inaccurate. So we did dispute it, and it is a material fact that should have rebutted summary judgment. As for Iqbal, regarding the individual defendants, Mendocino case said that retaliatory intent is almost always going to be based on circumstantial evidence. At the motion to dismiss phase, that's, you know, that's all we have. Taken together, you know, Martin could have tried to allege failure to act under the APA to stop the ongoing investigation. But as here, there was no mandate for, there's no, to use the defendants' counsel's term, no mandate on the government to act in a certain way, and therefore the APA was unavailable, and we should have a bivens claim.
judges: Fisher, N.R. Smith, Hurwitz